Caruthees, J.,
delivered the opinion of the Court.
The Legislature, on 27th February, 1856, passed an act by which a portion of the county of Marion was *491 attached to the county of Grundy. This hill was filed by Marion, to have her territory restored, upon the ground that the said act was unconstitutional.
By the Constitution, Article 10, sec. 4, the last clause, the county of Marion “ shall not be reduced below 1000 qualified voters ” in forming any new county. And, by a previous general clause, including Marion, no old county, “ shall be reduced to less than 625 square miles.” The bill alleges that the constitution has been violated by the act in question, in respect to population as well as territory.
It appears that by an. act of the same session, passed two days before, ch. 162, sec. 3, the first and second civil districts of Marion were attached to Hamilton, but this was not to take effect until the 21st September, 1857.
The proof shows, that without the two districts annexed to Hamilton, and the fraction attached to Grundy, the area of Marion would only be 492| square miles, and the number of qualified voters 870, including those in the part attached to Grundy. It is left to be inferred from the proof, and we suppose the fact to be so, that if the two districts were not detached for Hamilton, then both the territory and population of Marion would be sufficient to save the act in question from constitutional objection. So the case must turn upon the question, whether, at the time the act complained of was passed, the first and second districts constituted a part of Marion? Two days before, they had been stricken off, and attached to Hamilton, so far as the Legislature had power to do it. But it is said, that it was not to take effect until the next September. What of that ? The deed was done, and no conditions affixed. The territory and pop *492 ulation were transferred, and nothing remained to he done by any power — nothing but the lapse of seven months was required to consummate the deed. It must be regarded, then, that the Legislature had exhausted its power —and, perhaps, more than its legislative power, (but that question is not in this case) in dismembering this little county, before the last act was passed; and, if so, the same is unconstitutional.
It is argued, that the restrictions upon the legislative power, on the subject of reducing old counties, only apply to acts for the formation of new ones, and not to those for changing county lines, and detaching territory from one county and annexing it to another. This point was decided otherwise in the case of Gotcher vs. Burrows, 9 Hump., 585; and the policy of these restrictions upon the Legislature, is in that case, fully vindicated by irresistible reasoning.
The unceasing efforts, and ingenious devices, adopted to evade, or break loose from these restrictions, designed for the protection of old counties, against that restless desire for change, on the part of the people in particular sections, which is often fanned, if not kindled, by aspirants for their own benefit, demonstrate the necessity of the prohibition. The members of the convention, as wise and practical men, foresaw this evil, and endeavored to prevent it. It is the duty of the Courts to favor and firmly maintain that policy. And this Court has not failed to do so, in all cases, which had not passed beyond the control of the Courts before the institution of the proper proceedings. Maury vs. Lewis county, 1 Swan
Rut this case does not encounter the difficulty of that in Ford vs. Farmer, 9 Hump., 160, because it is not an *493 attempt to dissolve an established county, but falls under Maury vs. Lewis county, and Gotcher vs. Burrows. We are of opinion, that the act of February 27, 1856, ch. 248, so far as it relates to Marion county, is in conflict with the constitution, and, therefore, void.
The decree of the Chancellor will be reversed, and a decree is given here . in conformity with this opinion.